UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
TIMOTHY H. MOORE,                  )   No. C11-1342RSL
                                   )
            Plaintiff,             )
      v.                           )
                                   )   ORDER GRANTING IN PART
FEDERAL NATIONAL MORTGAGE          )   MOTIONS TO DISMISS AND
ASSOCIATION, *et al.*,             )   ORDER TO SHOW CAUSE
                                   )
            Defendants.            )
_____)

This matter comes before the Court on (i) the motion to dismiss brought by defendants Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and IBM Lender Business Process Services ("LBPS") (Dkt. # 14); (ii) the motion to dismiss brought by defendant Quality Loan Service Corporation of Washington, Inc. ("QLS") (Dkt. # 16); and (iii) the motion to rescind and expunge trustee's deed brought by plaintiff pro se Timothy M. Moore (Dkt. # 19). Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following Order.

**BACKGROUND**

In April 2008, plaintiff executed a promissory note for $189,740, payable to the order of Cobalt Mortgage, Inc. ("Cobalt"), which was secured by a deed of trust on a condominium located at 11255 Kirkland Way # 100, Kirkland, Washington. See Ex. 1 to Motion (Dkt. # 14); Ex. B to Plaintiff's Affidavit (Dkt. # 3-1). The deed of trust lists Cobalt as

"lender," Ticor Title as "trustee," and MERS as both "beneficiary" and "nominee" for lender and lender's successors and assigns. Ex. B to Plaintiff's Affidavit (Dkt. # 3-1). In March 2011, MERS, acting as nominee for Cobalt, executed as assignment of the deed of trust, in favor of Fannie Mae. Ex. D to Plaintiff's Affidavit (Dkt. # 3-2). The assignment was recorded in Snohomish County on March 8, 2011. Id. On April 19, 2011, LBPS, acting as attorney-in-fact for Fannie Mae, executed an appointment of successor trustee, naming QLS as trustee under the deed of trust at issue. Ex. C to Plaintiff's Affidavit (Dkt. # 3-1). The appointment of successor trustee was also recorded in Snohomish County. Id. On June 14, 2011, QLS recorded a notice of trustee's sale, specifying September 23, 2011, as the date of public auction. Ex. E to Plaintiff's Affidavit (Dkt. # 3-2). Plaintiff filed this action on August 12, 2011, asserting several claims.[1]

On September 8, 2011, Fannie Mae, MERS, and LBPS filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 12, 2011, QLS joined the other defendants' motion and raised additional grounds for dismissal under Rule 12(b)(6) and judgment on the pleadings under Rule 12(c). On September 23, 2011, the condominium at issue was purchased at the trustee's auction by Fannie Mae for a little over $158,000. Ex. A to Reply (Dkt. #20-1). Shortly thereafter, plaintiff filed a consolidated response to defendants' motions, along with a motion to rescind and expunge the trustee's deed of sale from the Snohomish County records. In their reply in support of their Rule 12(b)(6) motion, Fannie Mae, MERS, and LBPS contend that, as a result of the trustee's sale, plaintiff's

---

[1] Plaintiff presents the following theories for relief: (i) violation of 42 U.S.C. §§ 1981-1986 (disparity between classes of person, namely borrowers and lenders); (ii) violation of the Real Estate Settlement Procedures Act ("RESPA") (failure to respond to "qualified written requests"); (iii) violation of the Fair Debt Collection Practice Act ("FDCPA"); (iv) violation of the Fair Credit Reporting Act ("FCRA"); (v) foreclosure of an incorrect note; (vi) transaction prohibited by federal tax laws; (vii) recoupment and setoff; (viii) incomplete or failed endorsement of note; (ix) erroneous allegation of default; (x) violation of Washington Deeds of Trust Act; (xi) slander of title as to assignment of deed of trust; and (xii) slander of title as to notice of trustee's sale. Complaint at ¶¶ 20-31 (Dkt. # 1). Plaintiff also asserts two claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a ruling that the assignment of the deed of trust to Fannie Mae was fraudulent or invalid and that MERS cannot serve as a beneficiary under a deed of trust in Washington. Id. at ¶¶ 32-33.

1  various claims are now barred by the Washington Deeds of Trust Act.  QLS filed a separate
2  reply asserting the same argument.[2]

**DISCUSSION**

**A.    Standard for Rule 12(b)(6) Motion**[3]

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory or (ii) insufficient facts under a cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  Twombly, 550 U.S. at 570.  If the Court considers matters outside the complaint, it must convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

---

[2] In their replies, defendants cite no authority for the proposition that non-judicial foreclosure under state law would operate to bar claims under federal law.  The Court therefore declines to address this issue.

[3] Because no answers have yet been filed, QLS's motion under Rule 12(c) for judgment on the pleadings is premature and therefore STRICKEN without prejudice.  See Fed. R. Civ. P. 12(c) ("After the pleadings are closed . . . a party may move for judgment on the pleadings.");  Norcal Gold, Inc. v. Laubly, 543 F. Supp. 2d 1132, 1135 (E.D. Cal. 2008) ("For purposes of Rule 12(c), the pleadings are 'closed' only when the parties have filed all of the pleadings Rule 7(a) contemplates.").

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE      -3-

B. **Washington Deeds of Trust Act**

Washington courts have held that a borrower or grantor of a deed of trust who fails to employ the procedures of the Deeds of Trust Act ("DTA") to enjoin a foreclosure or trustee's sale waives the right to contest the underlying obligations on the foreclosed property. Plein v. Lackey, 149 Wn.2d 214 (2003); Brown v. Household Realty Corp., 146 Wn. App. 157 (2008); CHD, Inc. v. Boyles, 138 Wn. App. 131 (2007). These decisions are based on the following three goals of the DTA: (i) to promote an efficient and inexpensive nonjudicial foreclosure process; (ii) to ensure an adequate opportunity for interested parties to prevent wrongful foreclosure; and (iii) to secure the stability of land titles. Brown, 146 Wn. App. at 169.

The legislature, however, recently modified the waiver doctrine to exempt claims for common law fraud or misrepresentation, violations of Washington's Consumer Protection Act ("CPA"), failure by a trustee to comply with the DTA, and violation of RCW 61.24.026, thereby permitting these types of claims to be brought within a certain time period even when the borrower or grantor failed to enjoin the foreclosure sale. RCW 61.24.127. These types of claims, although allowed post-foreclosure, will not operate to encumber or cloud the title to the property auctioned at the trustee's sale. RCW 61.24.127(2)(e). Thus, plaintiff may not, as a matter of law, seek the remedy of rescission or expungement of the trustee's deed of sale. Plaintiff's motion to rescind and expunge the trustee's deed (Dkt. # 19) is therefore DENIED.

Whether plaintiff may pursue any state law claims now that the non-judicial foreclosure process has been completed remains unclear. The waiver exemptions enumerated in RCW 61.24.127 apply only to "owner-occupied residential real property." RCW 61.24.127(3). In his complaint, plaintiff pleaded that he was the owner of the residential property at issue, but he did not allege that he occupied it at the time he received the notice of default.[4] Throughout

---

[4] RCW 61.24.127 does not indicate exactly when the property must be owner occupied. The Foreclosure Fairness Act, however, which requires that a borrower receive certain information upon "initial contact," which is now a precursor to the issuance of a notice of default, applies so long as the property was owner occupied at the time of the "initial contact." See RCW 61.24.165(1); see also RCW 61.24.031. The Foreclosure Fairness Act

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE       -4-

the course of this proceeding, plaintiff has been receiving correspondence at an address other than the one for the property at issue in this matter.

Plaintiff asserts various causes of action, such as "incorrect note," "recoupment on non-negotiable security (*i.e.*, note)," "failed endorsement," "erroneous default," DTA violation, slander of title, and declaratory judgment claims (Complaint at ¶¶ 24, 26, 27, 28, 29, 30, 31, 32, & 33), all of which appear to be alternate forms of the "show me the note" assertion often made in these types of cases. The Court construes these claims as alleging a breach by the trustee, here QLS, of its obligation to obtain, prior to recording the notice of trustee's sale, proof that the beneficiary under the deed of trust is the owner of the related promissory note. See RCW 61.24.030(7)(a). These claims also challenge MERS's ability to serve as the beneficiary under the deed of trust. The latter issue is currently pending before the Washington Supreme Court. See Selkowitz v. Litton Loan Servicing LP, W.D. Wash. Case No. C10-5523JCC; Bain v. Metro. Mortg. Group Inc., W.D. Wash. Case No. C09-O149JCC (certifying pursuant to RCW 2.60.020 the following questions: (i) whether, under the DTA, MERS may act as a beneficiary when it does not hold the note secured by the deed of trust; (ii) the legal effect if MERS unlawfully acted as a beneficiary; and (iii) whether, if MERS is not a lawful beneficiary, the borrower has a cause of action under the CPA).

As construed, plaintiff's DTA and potential CPA claims, as well as his claims for declaratory judgment, may be pursued post-foreclosure provided that the condominium at issue qualified as owner-occupied residential real property. Plaintiff will therefore be given an opportunity to amend his complaint.

---

took effect on July 22, 2011, after the notice of trustee's sale was recorded, but before the trustee's sale at issue occurred. Whether plaintiff had substantive rights under the Foreclosure Fairness Act remains unclear. At a minimum, however, given the timing of events in this case, the Court is inclined to measure whether the property at issue was "owner occupied" at the time plaintiff received the notice of default, even if he later moved to a different residence.

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE      -5-

### C. Federal Claims

#### 1. 42 U.S.C. §§ 1981-1986

Plaintiff makes no allegation that defendants engaged in purposeful or intentional discrimination on the basis of race. His § 1981 and § 1982 claims will therefore be dismissed. See Gen. Bldg. Contractors Ass'n, Inc. v. Penn., 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination"); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968) (§ 1982 "is not a comprehensive open housing law . . . . [and] deals only with racial discrimination"); see also Denny v. Hutchinson Sales Corp., 649 F.2d 816, 822 (10th Cir. 1981) (a "plaintiff must prove discriminatory purpose to prove a violation of 42 U.S.C. § 1982").

Plaintiff also makes no allegation that defendants were acting under color of state law or deprived him of some right secured by the Constitution or laws of the United States. His § 1983 claim will likewise be dismissed. See Ouzts v. Md. Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974) (summarizing the elements of a § 1983 claim and indicating that "purely private conduct, no matter how wrongful, is not within the [statute's] protective orbit").

Similarly, because plaintiff makes no allegation of racial or class-based animus, his § 1985 and § 1986 claims will be dismissed. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (claim under § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions"); Bretz v. Kelman, 773 F.2d 1026, 1028-30 (9th Cir. 1985) (a § 1985(2) claim must be premised on "an allegation of class-based animus"); Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985) ("a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985").

#### 2. Real Estate Settlement Procedures Act ("RESPA")

RESPA requires lenders and loan servicers to timely respond to Qualified Written Requests ("QWRs") from borrowers. Within 5 days of receipt of a QWR from a borrower, a

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE        -6-

lender or servicer must provide written acknowledgment. 12 U.S.C. § 2605(e)(1)(A).[5] Within 30 days after receiving a QWR, the servicer must provide the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer. 12 U.S.C. § 2605(e)(2)(C). A QWR must be in writing, must request "information relating to the servicing of such loan," and must either include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error" or provide "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §§ 2605(e)(1)(A)&(B). The remedies for violating the QWR provisions of RESPA are "any actual damages" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(A)&(B).

   Defendants' contend that (i) plaintiff's letter dated June 29, 2011 (Ex. F to Plaintiff's Affidavit (Dkt. # 3)) does not constitute a QWR; (ii) even if construed as a QWR, servicer LBPS timely and adequately responded; and (iii) even if the QWR provisions of RESPA were violated, plaintiff has not alleged any actual damages and therefore cannot pursue his RESPA claim. Defendants' arguments are more appropriately brought in a motion for summary judgment. In his complaint, plaintiff alleges that he sent "multiple" QWRs, as to which he received either no or inadequate response. Complaint at ¶ 21 (Dkt. # 1). At this stage of the proceedings, the Court must accept these factual contentions as true. The Court therefore declines to evaluate whether one particular document filed by plaintiff constitutes a QWR or

---

[5] The Dodd Frank Act, Pub. L. 111-203, Title XIV, § 1400(c) and § 1463(b) (July 21, 2010), shortened the time periods in which the lender had to respond.

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE  -7-

whether LBPS's response thereto was sufficient under RESPA.[6]  In addition, in his complaint, plaintiff prays for both actual and statutory damages (Complaint at 12, ¶¶ (e) & (f)), which the Court views as adequate to plead his RESPA claim.  The Court makes no ruling concerning whether plaintiff could survive a motion for summary judgment absent evidence of either actual damages[7] or "a pattern or practice of noncompliance."

### 3. Fair Debt Collection Practice Act ("FDCPA")

Plaintiff's claim under the FDCPA is against LBPS and QLS for "failing to verify the alleged debt" and against Fannie Mae on the theory that LBPS and QLS are its agents.[8]  See Complaint at ¶ 22 (Dkt. # 1).  The Court construes plaintiff's claim as being brought under 15 U.S.C. § 1692g, which requires a "debt collector" to send a consumer written notice of certain information, including that the consumer has 30 days to dispute the debt in writing.  15 U.S.C. § 1692g(a).  If a consumer timely disputes the debt, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment" and mails the same to the consumer.  15 U.S.C. § 1692g(b).

Defendants appear to contend that LBPS and QLS were not required to send the 30-day notice outlined in § 1692g(a) and, as a result, plaintiff's correspondence (Ex. G to Plaintiff's Affidavit (Dkt. # 3)) cannot be viewed as a dispute of debt that would give rise to an obligation under § 1692g(b) to verify the debt.  Defendants fail to explain why LBPS and QLS

---

[6] Moreover, consideration of LBPS's response dated August 10, 2011 (Ex. 6 to motion (Dkt. #14)) would require the Court to convert the instant motion to one for summary judgment, which the Court declines to do.  See Fed. R. Civ. P. 12(d).

[7] The Court observes that whether RESPA permits recovery of emotional distress damages as a component of actual damages is the subject of ongoing debate.  Compare Katz v. Dime Sav. Bank, 992 F. Supp. 250 (W.D.N.Y. 1997), and In re Tomasevic, 273 B.R. 682 (Bankr. M.D. Fla. 2002), with Carter v. Countrywide Home Loans, Inc., 2009 WL 1010851 at *3 (E.D. Va.), and Ploog v. Homeside Lending, Inc., 209 F. Supp. 2d 863, 870 (N.D. Ill. 2002); see also Moon v. GMAC Mortg. Corp., 2009 WL 3185596 (W.D. Wash. Oct. 2, 2009).

[8] Defendants argue that plaintiff fails to state a FDCPA claim against Fannie Mae, but they do not address plaintiff's agency theory of liability.  The Court declines to consider the issue absent briefing by the parties.  Thus, as to Fannie Mae's potential liability under the FDCPA, the Rule 12(b)(6) motion is denied.

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE        -8-

would not be subject to the notice provision.

Defendants separately argue that QLS is not a "debt collector" within the meaning of FDCPA and that it is not, therefore subject to any of the FDCPA requirements, including the notice and validation provisions of § 1692g.[9] Defendants argue that the process of foreclosing on a deed of trust does not involve an attempt to collect on the underlying debt. Rather, the argument goes, the creditor has given up hope of recouping its money and is instead taking possession of the collateral in which it has a secured interest. Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5). The debt, then, is an obligation "to pay money." A "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). Because plaintiff has not alleged that defendants were attempting to compel monetary payments on the underlying loans, defendants do not fall within the first part of the definition of "debt collector." They may, however, be debt collectors "for purposes of § 1692f(6)" if their principal business is the enforcement of security interests.[10] Section

---

[9] Defendants do not assert this argument on LBPS's behalf. The Court declines to *sua sponte* analyze LBPS's status as a "debt collector."

[10] The current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA applies. See, e.g., Jara v. Aurora Loan Servs., LLC, 2011 WL 6217308, at * 5 (N.D. Cal.

1692f(6) prohibits a debt collector from taking or threatening to take "non-judicial action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6) (emphasis added). Under plaintiff's theory of the case, QLS had no present right to possession of the property through non-judicial foreclosure because neither it nor its principal was the holders of the underlying debt instrument. Thus, if plaintiff is able to prove the underlying DTA violation, he may also be able to show that QLS is a debt collector under the second part of the definition provided by § 1692a(6) and that they violated § 1692f(6)(A). In the absence of any allegations that QLS engaged in conduct beyond that necessary to effectuate a nonjudicial foreclosure, it is not a "debt collector" for any purpose other than § 1692f(6) and is not subject to the other requirements or prohibitions of the FDCPA.[11]

---

Dec. 14, 2011); Pizan v. HSBC Bank USA, N.A., 2011 WL 2531104, at *3 (W.D. Wash. June 23, 2011); Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 WL 1938166, at *11-12 (D. Or. May 20, 2011); Armacost v. HSBC Bank USA, 2011 WL 825151, at * 5-6 (D. Idaho Feb. 9, 2011); Long v. Nat'l Default Servicing Corp., 2010 WL 3199933 at *4 (D. Nev. Aug. 11, 2010). See also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (relying on the two-part definition of "debt collector" to find that, if a party falls only within the security interest provisions of the definition, then they "are subject only to this provision [§ 1692f(6)] and not the rest of the FDCPA.'"). While this analysis has not be universally accepted (see, e.g., Gillespie v. Countrywide Bank FSB, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011) (stating without analysis that "activities undertaken in connection with a nonjudicial foreclosure do not constitute debt collection under the FDCPA") and Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (noting that plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced," such that actions "surrounding foreclosure proceeding were attempts to collect that debt" under the FDCPA)), the Court finds it persuasive based on both the language of the statute and its policy implications.

[11] In light of this federal claim against QLS, QLS's separate motion to dismiss for lack of subject matter jurisdiction, which is premised on incomplete diversity (both plaintiff and defendant QLS being citizens of Washington), see 28 U.S.C. § 1332(a)(1), is STRICKEN as moot.

ORDER GRANTING IN PART MOTIONS
TO DISMISS AND ORDER TO SHOW CAUSE   -10-

### 4. **Fair Credit Reporting Act ("FCRA")**

Plaintiff's FCRA claim is asserted against only LBPS. Complaint at ¶ 23 (Dkt. # 1). Because plaintiff does not allege that LBPS is a "consumer reporting agency" or "user of credit information," plaintiff's claim is construed as being brought under 15 U.S.C. § 1681s-2(b) to hold LBPS liable as a "furnisher" of information provided to credit agencies. See Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057 (9th Cir. 2002). The duties of a furnisher, as set forth in § 1681s-2(b), arise when the furnisher receives notice from a consumer reporting agency ("CRA") that a consumer has disputed the completeness or accuracy of information in the consumer's file. See 15 U.S.C. § 1681s-2(b)(1); 15 U.S.C. §§ 1681i(a)(1)&(2). Plaintiff does not allege that he disputed information in a CRA's file or that any CRA conveyed to LBPS a notice that would have triggered LBPS's investigation and reporting duties under § 1681s-2(b). Thus, the Court will dismiss plaintiff's FCRA claim.

### 5. **Federal Tax Laws**

Plaintiff asserts a claim under federal tax laws. Complaint at ¶ 25 (Dkt. # 1). Although the Court doubts that plaintiff has standing to assert this claim, defendants have not moved to dismiss it. The Court declines to consider the matter *sua sponte*.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Plaintiff's motion to rescind and expunge trustee's deed (Dkt. # 19) is DENIED;

(2) Defendants' motions to dismiss (Dkt. # 14 and # 16) are GRANTED in part and DENIED in part;

(3) Plaintiff's claims under 42 U.S.C. §§ 1981-1986 and under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), are DISMISSED;

(4) Plaintiff shall have fourteen days from the date of this Order to file an amended complaint that includes, to the extent consistent with his obligations under Federal Rule of Civil Procedure 11, an allegation that the property at issue was owner-occupied at the time he received

1 the notice of default;

2     (5)     QLS's motion to dismiss for lack of subject matter jurisdiction, which is premised
3 on incomplete diversity is STRICKEN as moot; and

4     (6)     The parties are ORDERED TO SHOW CAUSE, on or before March 2, 2012, why
5 this action should not be stayed pending the Washington Supreme Court's decision on the
6 questions certified in <u>Selkowitz v. Litton Loan Servicing LP</u>, W.D. Wash. Case No. C10-
7 5523JCC, and <u>Bain v. Metro. Mortg. Group Inc.</u>, W.D. Wash. Case No. C09-0149JCC. The
8 Clerk of Court is directed to note this Order to Show Cause on the Court's calendar for March 2,
9 2012.

        Dated this 9th day of February, 2012.

                */s/ Robert S. Lasnik*
                Robert S. Lasnik
                United States District Judge