1   ROUTH CRABTREE OLSEN, P.S.                    The Honorable Robert S. Lasnik
    Charles E. Katz, SBN 40610
2   13555 SE 36th St, Suite 300
    Bellevue, WA 98006
3   Tele: 425-586-1940; Fax: 425-440-6032

4   Attorneys for Defendant,
    Mortgage Electronic Registration Systems, Inc.

5

6                          UNITED STATES DISTRICT COURT
7                        WESTERN DISTRICT OF WASHINGTON

8
    TIMOTHY M. MOORE,                          )
9                                              )
                Plaintiff,                      )
10                                             )   No. 2:11-CV-01342-RSL
                v.                             )
11                                             )
    FEDERAL NATIONAL MORTGAGE                  )   **DEFENDANT MORTGAGE**
12  ASSOCIATION; MORTGAGE                      )   **ELECTRONIC REGISTRATION**
    ELECTRONIC REGISTRATION                    )   **SYSTEMS, INC.'S MOTION FOR**
13  SYSTEMS, INC.; QUALITY LOAN                )   **SUMMARY JUDGMENT**
    SERVICE CORP. OF WASHINGTON;               )
14  IBM LENDER BUSINESS PROCESS                )   NOTE ON MOTION CALENDAR:
    SERVICES                                   )   OCTOBER 12, 2012
15                                             )
                Defendants.                     )
16                                             )
17  _____)

18          COMES NOW Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") and

19  moves this Court pursuant to FRCP 56 for an order granting summary judgment as to Plaintiff's

20  breach of contract claim against MERS.

21
22              **I.       FACTUAL BACKGROUND**

23          MERS incorporates and adopts the statement of facts in their Motion to Dismiss and the

24  exhibits attached thereto (Dkt: #14).

25          On or about April 9, 2008, Plaintiff executed a promissory note ("Promissory Note") in the

26

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
11-CV-01342-RSL
PAGE 1 OF 8

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

amount of $189,740 payable to Cobalt Mortgage Inc.  In order to secure repayment of the Note, Plaintiff granted to MERS as beneficiary, solely as nominee for the lender, Cobalt Mortgage, Inc., and lender's successors and assigns, a deed of trust ("Deed of Trust").  The Deed of Trust encumbers real property commonly known as 21301 48th Ave W, #A-205, Mountlake Terrace, WA 98042 ("Property").  The Deed of Trust was recorded on April 11, 2008 as Instrument No. 200804110764 in the Official Records of Snohomish County, Washington (a true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated herein).

MERS subsequently assigned the beneficial interest in the Deed of Trust to FNMA by way of an Assignment of Deed of Trust, recorded on March 8, 2011 as Instrument Number 202203080700 in the Official Records of Snohomish County.  On April 19, 2011, Quality Loan Service Corporation of Washington ("QLS") was appointed successor trustee under the Deed of Trust.  The appointment of QLS as successor trustee was recorded on April 21, 2011 as Instrument Number 201104210224 in the Official Records of Snohomish County.

Pursuant to RCW §§61.24 et seq., QLS recorded a Notice of Trustee's Sale on June 14, 2011 as Instrument Number 201106140364 in the Official Records of Snohomish County.  The trustee's sale occurred on September 23, 2011 (see Dkt. Txt. #27).

## II.      PROCEDURAL BACKGROUND

Plaintiff filed his First Amended complaint on March 2, 2012 (see Dkt. Text #28).  On March 19, 2012, this Court issued an Order addressing Plaintiff's three causes of action asserting; 1) an FDCPA claim against all defendants; 2) a breach of contract claim against defendant MERS; and 3) a Deed of Trust Act ("DTA") claim against all defendants (see Dkt. Txt #29).  In its Order,

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
11-CV-01342-RSL
PAGE 2 OF 8

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

the Court found that the FDCPA and DTA claims fail as a matter of law, for reasons stated in the Court's previous February 9, 2012 Order (*Id.*, see also Dkt. Txt. #25).  The Court declined to determine the validity of the MERS breach of contract claim because it was not the subject of the defendants' original motion to dismiss (although the Court suspected that this claim was waived along with the DTA and declaratory judgment claims) (see Dkt. Txt. #29).  The Court stayed this case pending the Washington Supreme Court's decision on the questions certified in *Bain v. Metro. Mortg. Group, Inc.*, C09-0149JCC (W.D. Wash.) and *Selkowitz v. Litton Loan Servicing LP*, C10-5523JCC (W.D. Wash.).

On August 16, 2012, the Supreme Court issued its ruling on the questions certified in *Bain* and *Selkowitz* cited as *Bain v. Metro. Mortg. Group, Inc.*, 86206-1, 2012 WL 3517326 (Wash. 2012) by answering:

1. Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Washington's deed of Trust Act, Revised Code of Washington section 61.24.005(2), if it never held the promissory note secured by the deed of trust?  [Short answer: No.]
2. If so, what is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?  [Short answer: We decline to answer based upon what is before us.]
3. Does a homeowner possess a cause of action under Washington's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?  [Short answer: The homeowners may have a CPA action but each homeowner will have to establish the elements based upon the facts of that homeowner's case.]

Order Certifying Question to the Washington State Supreme Ct. (Certification) at 3-4

///

///

///

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

### III.    ARGUMENT

2

#### A.    SUMMARY JUDGMENT STANDARD

3

4        Summary judgment is proper when "the pleadings, the discovery and disclosure materials

5  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

6  movant is entitled to judgment as a matter of law."  FRCP 56(c).  "[T]he plain language of Rule

7  56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion

8  against a party who fails to establish an element essential to that party's case, and on which that

9  party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

10        The moving party has the initial burden of showing that no genuine issue of material fact

11  exists.  *Celotex*, 477 U.S. at 323.  Once the moving party has shown the absence of a disputed issue

12  of fact, it is entitled to summary judgment if the non-moving party fails to present, by affidavits,

13  depositions, answers to interrogatories, or admissions on file, "specific facts showing there is a

14  genuine issue for trial.  *Id*. at 324.  Factual disputes whose resolution would not affect the outcome

15  of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v.*

16  *Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Conclusory statements, speculation, personal

17  beliefs, and unsupported assertions are insufficient to withstand a summary judgment motion, and

18  "missing facts" will not be "presumed."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89

19  (1990).

20

21

#### B.    MERS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT

22

23        Plaintiff's First Amended Complaint alleges a breach of contract by MERS and is

24  presumably based upon solely upon MERS being identified as a party in Plaintiff's deed of trust

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

(see Dkt. Txt. #14).   Based upon the Washington Supreme Court's decision on the questions certified in the *Bain* and *Selkowitz* cases, Plaintiff's breach of contract cause of action fails because: a) the fact that MERS is identified in the deed of trust does not void the deed of trust, nor does it constitute any breach of the deed of trust; b) assignment of the deed of trust is not required under the Deed of Trust Act in order to commence or proceed with the nonjudicial process; and c) Plaintiff failed to restrain the trustee's sale.   MERS respectfully requests that its motion for summary judgment be granted.

### 1.      Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted For the Breach of Contract Claim Against MERS

Plaintiff fails to state a claim against MERS for breach of contract.   To state a breach of contract claim, a plaintiff must at a minimum allege: (1) the existence of a contract that imposes a duty on the defendants; (2) that the defendant failed to fully perform its duty imposed by the contract; and (3) resultant damages.   *Jacob's Meadow Owers Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, fn. 3, *citing Restatement (Second) of Contracts*, Section 235(b)(1979) and *Rathke v. Roberts*, 33 Wn. 3d 858, 865 (1949).

Plaintiff's First Amended Complaint fails to identify what actual contract MERS breached or even which contractual obligation MERS actually breached (see Dkt. Txt. #28).   Assuming Plaintiff is alleging a breach of the deed of trust, the Supreme Court's decision does not void a deed of trust simply because MERS is identified as a beneficiary, nor did the decision find any breach of the deed of trust contract in which MERS is a party.   *Bain v. Metro. Mortg. Group, Inc.*, 86206-1, 2012 WL 3517326 at *14-15.   Other than identifying MERS as a party to the deed of trust, Plaintiff fails to assert which contract term or condition that any party breached; therefore the Motion for

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Summary Judgment should be granted.

### 2. Assignment of the Deed of Trust is not a Requirement of the Deed of Trust Act

An Assignment of Deed of Trust is not a required part of the non-judicial foreclosure process; its recordation is done in accordance with RCW 65.04.030, and establishes lien priority under RCW 65.08.070.  See *Fed. Nat. Mortg. Ass'n v. Wages*, 2011 WL 5128724 (W.D. Wash. Oct. 28, 2011); *Williams v. Wells Fargo Bank, N.A.*, 2012 WL 72727 (W.D. Wash. Jan. 10, 2012); *Corales v. Flagstar Bank, FSB*, 2011 WL 4899957 (W.D. Wash. Oct. 14, 2011) ["Washington State does not require the recording of such transfers and assignments."]; *In re United Home Loans*, 71 B.R. 885, 891 (Bankr.W.D.Wash.1978), aff'd, 876 F.2d 897 (9th Cir.1989) ["An assignment of a deed of trust…is valid between the parties whether or not the assignment is ever recorded…"]. Regardless of whether MERS can act as an agent of the Lender or properly assign a deed of trust, the assignment is simply not a requirement of the nonjudicial foreclosure process; therefore any allegation that the assignment constitutes a breach of contract fails as a matter of law and the Motion for Summary Judgment should be granted.

### 3. Plaintiff Waived the Right to its Breach of Contract Claim Due to Failure to Restrain the Trustee's Sale

In Washington, the Deed of Trust Act ("DTA") governs non-judicial foreclosures and the process borrowers may take to challenge foreclosures.  See RCW § 61.24.130.  The Deed of Trust Act provides a procedure by which any enumerated entity may restrain a trustee's sale on any proper ground.  *Brown v. Household realty Corp.*, 146 Wn.App. 157, 163 (2008).  This statutory procedure is the only means by which a grantor may preclude a trustee's sale once foreclosure has

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

begun with receipt of the notice of sale and foreclosure. *Id*. While RCW § 61.24.127 preserves certain claims post-trustee's sale, a borrower may not seek any remedy at law or equity other than monetary damages and also cannot challenge the validity or finality of the sale. See RCW § 61.24.127; See also *Yongbae Kim v. Bank of America, N.A.*, 2011 WL 3563325, at *3 (W.D.Wash. 2011). Objections to the trustee's sale are waived where pre-sale remedies are not pursued. *Plein v. Lackey*, 149 Wash.2d 214, 227-29, 67 P.3d 1061 (2003). The failure of a borrower to bring a civil action to enjoin a foreclosure sale, however, may not be deemed a waiver of a claim for damages asserting; (a) common law fraud or misrepresentation; (b) a violation of the Consumer Protection Act RCW Title 19; or (c) failure of the trustee to materially comply with the provisions of the DTA. RCW 61.24.127(1).

Here, as acknowledged by Plaintiff, the trustee's sale occurred on September 23, 2011. (see Dkt. Txt. #27). Plaintiff failed to invoke any pre-sale remedy of restraining the sale afforded to him under the DTA and failed to bring any post-foreclosure causes of action for: (a) common law fraud or misrepresentation; (b) a violation of the Consumer Protection Act RCW Title 19; or (c) failure of the trustee to materially comply with the provisions of the DTA. RCW 61.24.127(1). As such, Plaintiff's breach of contract claim is waived and the Motion for Summary Judgment should be granted. See RCW §§ 61.24.127, 61.24.130.

///

///

///

///

///

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

### III.     CONCLUSION

2       For the reasons set forth above, Defendants respectfully requests that the Court grant its

3  Motion for Summary Judgment.

4

5  DATED: on this 18th day of September, 2012.

6                                          Respectfully Submitted,

7                                          **ROUTH CRABTREE OLSEN, P.S.**

8

9                                          By:  / s / Charles E. Katz
                                                Charles E. Katz, Esq.
10                                              Attorneys for Defendant
                                                Mortgage Electronic Registration
11                                              Systems, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**EXHIBIT
1**

After Recording Return To
COBALT MORTGAGE, INC.
11255 KIRKLAND WAY #100
KIRKLAND, WASHINGTON 98033



2008041110764        21  PGS
04/11/2008 4:25pm $63.00
SNOHOMISH COUNTY, WASHINGTON

─────────────────[Space Above This Line For Recording Data]─────────────────

Loan Number: 1080324008

**DEED OF TRUST**

TICOR TITLE

MIN 1002765-1080324008-7

6409927-E

②

Grantor(s) (Last name first, then first name and initials)
1  MOORE, TIMOTHY M
2
3
4
5
6
☐   Additional names on page _____ of document

Grantee(s) (Last name first, then first name and initials)
1  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS)
2
3  Cobalt Mortgage, Inc
4
5
6  Ticor Title
☐   Additional names on page _____ of document

Legal Description (abbreviated  i e , lot, block, plat or section, township, range)
Unit A205, Bldg A, Axis Condo Ph2 AF
# 200708225006 in Snohomish County, Washington

Full legal description on page    3    of document

Assessor's Property Tax Parcel(s) or Account Number(s) ~~27-0428-001-005-00~~ IOP

Reference Number(s) Assigned or Released  01-0801-000-001-00-IOP

☐    Additional references on page _____ of document

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                    Page 1 of 17

DocMagic ☎ 800-649-1362
www.docmagic.com

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21   Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A)**   **"Security Instrument"** means this document, which is dated   APRIL 9, 2008   , together with all Riders to this document
**(B)**   **"Borrower"** is   TIMOTHY M MOORE, A SINGLE PERSON

Borrower is the trustor under this Security Instrument
**(C)**   **"Lender"** is   COBALT MORTGAGE, INC.

Lender is a   WASHINGTON CORPORATION
and existing under the laws of   WASHINGTON                                          organized
Lender's address is   11255 KIRKLAND WAY #100, KIRKLAND, WASHINGTON
98033

**(D)**   **"Trustee"** is   TICOR TITLE - BELLEVUE
400 112TH AVE NE, STE 120, BELLEVUE, WASHINGTON 98004

**(E)**   **"MERS"** is Mortgage Electronic Registration Systems, Inc   MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns   MERS is the beneficiary under this Security Instrument   MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI  48501-2026, tel  (888) 679-MERS
**(F)**   **"Note"** means the promissory note signed by Borrower and dated   APRIL 9, 2008
The Note states that Borrower owes Lender   ONE HUNDRED EIGHTY-NINE THOUSAND SEVEN
HUNDRED FORTY AND 00/100                   Dollars (U S $ 189,740.00          ) plus interest
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MAY 1, 2038
**(G)**   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property "
**(H)**   **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest
**(I)**   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower   The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☒ Condominium Rider | ☐ Other(s) [specify] | |

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M)    "Escrow Items" means those items that are described in Section 3

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U S C  §2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SNOHOMISH |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 27-0428-001-005-00-IOP



01-0801-000-001-00 -IOP

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                                Page 3 of 17

DocMagic *800-649-1362
www docmagic com

which currently has the address of

21301 48TH AVE W, #A-205
[Street]

MOUNTLAKE TERRACE , Washington 98043 ("Property Address")
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property"  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                         Page 4 of 17

DocMagic  800-649-1362
www docmagic com

now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3   Such payments shall be applied to each Periodic Payment in the order in which it became due   Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge   If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full   To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due   Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3   **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10   These items are called "Escrow Items "   At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item   Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section   Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items   Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time   Any such waiver may only be in writing   In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require   Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9   If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount   Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can

require under RESPA   Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The  Funds  shall  be  held  in  an  institution  whose  deposits  are  insured  by  a  federal  agency, instrumentality,  or  entity  (including  Lender,  if  Lender  is  an  institution  whose  deposits  are  so  insured)  or  in any Federal Home Loan Bank   Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA   Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge   Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds   Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds   Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA   If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments   If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4    Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument,  leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any   To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests  the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument   If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5.    Property Insurance   Borrower shall keep the improvements now existing, or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including,  but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires   What Lender requires pursuant to the preceding sentences can change during the term of the Loan   The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably   Lender may require

DocMagic EForms  800-649-1362
www  docmagic  com

Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's

rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6.   Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7.   Preservation, Maintenance and Protection of the Property, Inspections**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8.   Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property   Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding   Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any

duty or obligation to do so   It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument   These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease   Borrower shall not, without the express written consent of Lender, alter or amend the ground lease   If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect   If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender   If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect   Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance   Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve   Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance   If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law   Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed   Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses   These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements   These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses   If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance "  Further

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements  will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly   Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the  excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and

apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due    "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument   Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument   The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12.   Borrower Not Released; Forbearance By Lender Not a Waiver**   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower   Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower   Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13.   Joint and Several Liability; Co-signers; Successors and Assigns Bound.**   Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several   However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")   (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument   Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing   The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14.   Loan Charges**   Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee   Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                             Page 11 of 17

DocMagic ⅌℠   800-649-1362
www docmagic com

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16.  Governing Law, Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against  agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument

**18   Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including  but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security

DocMagic ⟨⟩⟨⟩⟨⟩⟨⟩⟨⟩⟨⟩, 800-649-1362
www docmagic com

Instrument   However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration   The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer   Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law   There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note   If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing   If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action   If Applicable Law provides a

time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21.  Hazardous Substances**   As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the  Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law   Nothing herein shall create any obligation on Lender for an Environmental Cleanup

**NON-UNIFORM COVENANTS**  Borrower and Lender further covenant and agree as follows

**22.  Acceleration; Remedies**  Lender shall give notice to Borrower prior to acceleration following **Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default, (b) the action required to cure the default; (c) a date, not less than 30 days  from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice  may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future.  The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other  defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and**

may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require  After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines  Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23.  Reconveyance  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

24.  Substitute Trustee.  In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

25  Use of Property  The Property is not used principally for agricultural purposes

26.  Attorneys' Fees.  Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument  The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

_____ (Seal)          _____ (Seal)
TIMOTHY M. MOORE                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____                 _____
Witness                                          Witness

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                    Page 16 of 17

DocMagic eForms 800 649 1362
www.docmagic.com

————————————— [Space Below This Line For Acknowledgment] —————————————

State of Washington          )

County of  KING              )

On this day personally appeared before me    TIMOTHY M MOORE

_____

_____

_____

to me known to be the individual, or individuals described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned

Given under my hand and official seal this 10  day of  April  2008

Notary Public in and for the state of Washington,
residing at  Seattle

My commission expires  9/9/2010

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01                              Page 17 of 17

DocMagic eFormes  800-649-1362
www.docmagic.com



File No 6409927-E

**Legal Description**
**Exhibit "A"**

The land referred to herein is described as follows

Unit A-205, Building A, Axis Condominium Phase 2, recorded under Snohomish County Recording Number(s) 200708225006, and as amended under Recording Number 200712075012 and 200712075013, according to the declaration thereof, recorded in Snohomish County Recording Number(s) 200708220705 and amendments thereto
SITUATE in the County of Snohomish, State of Washington


Unofficial Document



Loan Number: 1080324008

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 9th day of APRIL, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to COBALT MORTGAGE, INC., A WASHINGTON CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at

21301 48TH AVE W, #A-205, MOUNTLAKE TERRACE, WASHINGTON 98043
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as

AXIS CONDOMINIUMS
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A   Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the (i) Declaration or any other document which creates the Condominium Project, (ii) by-laws, (iii) code of regulations, and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B.   Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

**C.   Public Liability Insurance.**   Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

**D.   Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender   Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

**E.   Lender's Prior Consent.**   Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain, (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

**F.   Remedies.**   If Borrower does not pay condominium dues and assessments when due, then Lender may pay them   Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument   Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider

_____ (Seal)
TIMOTHY M. MOORE                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Unofficial Document